Patty L. BRIGGS, Appellant,

v.

Danny L. BAKER, Respondent.

No. WD 32249.

Missouri Court of Appeals, Western District.

April 6, 1982.

Robert G. Smith, Smith & Elson, Robert Devoy, Brookfield, for appellant.

Stockard, Andereck, Hauck, Sharp & Evans, Terry M. Evans, Jack Peace, Earl W. Brown, III, Trenton, for respondent.

Before SOMERVILLE, C. J., Presiding, and WASSERSTROM and KENNEDY, JJ.

SOMERVILLE, Chief Judge.

This appeal was prompted by plaintiff's (hereinafter referred to as Mrs. Briggs) loss of a $15,000.00 verdict in a jury tried automobile negligence case which occurred when the trial court sustained defendant's (hereinafter referred to as Baker) motion for new trial.

The accident out of which Mrs. Briggs' claim for personal injuries arose occurred at approximately 3:30 P.M. on March 15, 1974, within the corporate limits of Brookfield, Missouri, a third class city. At the time in question Mrs. Briggs was sitting in the back seat of a 1968 Ford Mustang driven by her son, Dewain Briggs. A friend of Dewain's was sitting in the right front seat. The 1968 Mustang was travelling south on Livingston Street in Brookfield, Missouri, at a speed of approximately 15 miles per hour and approaching the intersection of Livingston and Wood Streets. There was a "yield" sign at the southwest corner of the intersection posted against eastbround traffic on Wood Street approaching the intersection. Baker was travelling east on Wood Street in a 1967 Pontiac Tempest. Baker stopped at the "yield" sign, looked towards the north, then towards the south, then straight ahead, and pulled out into the intersection. According to Baker, when he looked to the north the 1968 Ford Mustang was approximately one block north of the intersection. According to Dewain Briggs, the 1968 Pontiac Tempest pulled out "right in front" of him. Dewain Briggs hit the brakes, sounded his horn, and swerved to his left. The 1968 Ford Mustang laid down skidmarks approximately thirteen feet in length leading up to the point of impact which occurred in the upper right corner of the southwest quadrant of the intersection.

The right front corner of the 1968 Ford Mustang collided with the left rear corner of the 1968 Pontiac Tempest.

According to Mrs. Briggs, the force of the impact threw her "forward" and "backward", and she was "pinched between two seats". Following the collision, Mrs. Briggs was helped from the 1968 Ford Mustang by her son. At the scene she complained that her "back was hurting". At the time of the accident, Mrs. Briggs, her son, and the other passenger in the 1968 Ford Mustang were planning to go to Chillicothe, Missouri, where her son intended to do some shopping. Immediately following the accident, the group went on to Chillicothe, Missouri, in an automobile belonging to Mrs. Briggs. After a short stay in Chillicothe, they drove to Carrollton, Missouri, where Mrs. Briggs went to the office of Dr. H. M. Wagaman, a chiropractor, for examination and treatment. Mrs. Briggs was never hospitalized as a result of the automobile accident.

Drs. Wagaman and Dixon appeared as expert medical witnesses on Mrs. Briggs' behalf at the trial. Dr. Wagaman diagnosed Mrs. Briggs' injuries as "soft tissue damage of the cervical area", "sublaxation of the first, second and third cervical vertebrae, lateral displacement of the first dorsal vertebra, and displacement of the right and left illium". Dr. Dixon, a chiropractor in Brookfield, Missouri, who subsequently treated Mrs. Briggs essentially confirmed the diagnostic findings of Dr. Wagaman. Drs. Wagaman and Dixon both testified that Mrs. Briggs had sustained permanent injuries. Dr. Wagaman was described by Mrs. Briggs as "their family doctor". Throughout a period of several years prior to March 15, 1974, Mrs. Briggs, on various occasions, had received chiropractic treatments from Dr. Wagaman "from one end of her spine to the other."

Plaintiff's Exhibits 3, 4, 7, 8, 9, and 11 were identified by Mrs. Briggs as bills she received from, respectively, Dr. Robinson, a chiropractor in Chillicothe, Missouri, Howell, a medical doctor in Brookfield, Missouri, Walk, a chiropractor in Chillicothe, Missouri, Bonnett, a chiropractor in Chillicothe, Missouri, Wright, a chiropractor in Marceline, Missouri, and Yowell, a chiropractor in Kirksville, Missouri. None of the doctors just mentioned testified at the trial. Mrs. Briggs' testimony concerning the various exhibits was exceedingly sparse. As a practical matter, it was limited to the fact that she had gone to said doctors on various occasions sometime after March 15, 1974, and had personally paid the bills they submitted. She did not testify that she went to any of them for treatment or services in connection with any injuries she claimed to have received in the accident or that she made any complaints to any of them regarding any injuries she purportedly received in the accident. Moreover, she did not testify as to the type or nature of any treatment or services that any of the doctors heretofore mentioned rendered. Counsel for Baker objected to Plaintiff's Exhibits 3, 4, 7, 8, 9, and 11 when they were offered into evidence on, among other, grounds that no foundation had been laid and that no evidence was introduced to show that the services of the various doctors and the respective bills submitted by them were reasonably incurred in connection with any injuries she claimed to have sustained in the accident of March 15, 1974. The objection was overruled, and the controversial exhibits were admitted into evidence.

Mrs. Briggs testified that she was still suffering from "headaches", "stiff neck", "back pain", "tender-thighs", and that her hands would "go to sleep". Baker called two medical doctors as expert witnesses on his behalf, one of whom testified that on the basis of his examination of Mrs. Briggs and various x-rays he found no evidence of any injuries or the sequelae of any injuries, and the other of whom testified that the only thing he found on examining Mrs. Briggs was some limitation of motion in the cervical area which was not permanent in nature.

In her petition, Mrs. Briggs pleaded special and general damages. As grounds of

actionable negligence, Mrs. Briggs alleged that Baker failed to "keep a careful lookout", and, additionally, that he violated Section 6.53(c) of the Municipal Code of Brookfield, Missouri, regarding the right of way at intersections controlled by "yield" signs. The ordinance just mentioned was offered and admitted into evidence at the behest of Mrs. Briggs over an objection by Baker that it had not been validly enacted.

Baker's answer consisted of a general denial, coupled with affirmative allegations that Mrs. Briggs and her son were engaged in a "joint venture and common enterprise" at the time in question, and that certain negligent acts of her son, all of which were imputable to her, directly and proximately caused any injuries or damages she sustained. Mrs. Briggs' verdict directing instruction (MAI 17.02 and 11.03) disjunctively submitted that Baker "failed to keep a careful lookout" or "failed to yield the right of way".

This appeal, at the very outset, takes an ill-starred course as no grounds were specified by the trial court in its order sustaining Baker's motion for new trial. According to Rule 84.05(b), when a trial court grants a new trial without specifying of record the ground or grounds upon which the new trial is granted, "the presumption shall be that the trial court erroneously granted the motion for new trial and *the burden of supporting such action is placed on the respondent.*" (Emphasis added.) Rule 84.05(b) further provides: "In such event if the appellant serves on the respondent a statement requesting that respondent prepare the original brief on or before the time when the record on appeal is filed, the respondent shall file the original brief and reply brief, if any, and serve them within the time otherwise required for the appellant to serve briefs."

Unfortunately, Mrs. Briggs, appellant herein, failed to serve Baker, respondent herein, with a statement requesting reversal of the order of briefing as provided by Rule 84.05(b), with the end result that Mrs. Briggs filed the original brief on appeal. Mrs. Briggs, in her brief, attempts to separately negate all twenty-one grounds assigned by Baker in his motion for new trial. Fortunately, Baker, in his brief, in shouldering the burden of supporting the action of the trial court in granting the new trial absent specificity as to the grounds for doing so, relies on only five of the twenty-one grounds asserted in his motion for new trial, thereby considerably narrowing the issues on appeal.

■ Disposition of this appeal neither demands, nor do the exigencies of time permit, this court to write on each of the five points relied on by Baker in his brief. One point quickly surfaces which alone, as subsequently demonstrated, justified the action of the trial court in granting a new trial. Namely, Baker's contention that the trial court erred in overruling his objection to Plaintiff's Exhibits 3, 4, 7, 8, 9, and 11 because no evidence was introduced that the services reflected by the various exhibits were reasonably necessary to treat or alleviate any injuries Mrs. Briggs claimed to have received in the accident. One other point relied on by Baker warrants being addressed for guidance of the parties on retrial, to wit, whether the city ordinance pleaded by Mrs. Briggs, and offered and received in evidence, was admissible in view of Baker's objection that it had not been validly enacted. Insofar as all remaining points are concerned, the parties have the benefit of the respective briefs and it is assumed that they will be guided accordingly on retrial.

Baker's contention that the trial court erred in admitting Plaintiff's Exhibits 3, 4, 7, 8, 9, and 11 over his objection will now be addressed in greater detail. As previously noted, the respective exhibits consist of charges incurred by Mrs. Briggs for treatment and services by various doctors other than Wagaman and Dixon subsequent to March 15, 1974. Admittedly, the charges reflected by the exhibits in question were personally paid by Mrs. Briggs. However, Mrs. Briggs at no time testified why she went to any of said doctors, or as to the

nature of any treatment or services rendered, or that she went to any of them for treatment or services in connection with any injuries purportedly received in the accident of March 15, 1974, or that she related any complaints of any kind to any of them. Moreover, a careful perusal of the entire record fails to disclose any evidence from which it might be inferred that she went to any of said doctors for treatment or services in connection with any injuries she claims to have received in the accident. Suffice it to say, there is a glaring void in the record, and whether the undisclosed nature of their services represented by the various bills were reasonably necessary or in any way connected with injuries Mrs. Briggs claims she received in the accident rests in the quicksands of speculation, conjecture and surmise. It is appropriate to be reminded that Mrs. Briggs, throughout a period of several years prior to March 15, 1974, had received chiropractic treatments from Dr. Wagaman from "one end of her spine to the other." Consequently, one could just as easily speculate, on the basis of the record, that the charges reflected by the various exhibits in question were incurred for treatment or services wholly unrelated to any injuries claimed by Mrs. Briggs to have resulted from the accident on March 15, 1974.

■ The rule applicable to the issue at hand is well stated in *Wise v. Towse*, 366 S.W.2d 506, 508 (Mo.App.1963): "The general rule is that charges for medical services such as those before us, which are items of special damages, must be supported by substantial evidence that they were reasonable and the *services reasonably necessary* in order for them to be recoverable. *Spica v. McDonald*, Mo.Sup., 334 S.W.2d 365; *Girratono v. Kansas City Public Service Co.*, 363 Mo. 359, 251 S.W.2d 59 (9–10); *Heibel v. Robison*, Mo.App., 316 S.W.2d 328." (Emphasis added.) The general rule laid down in *Wise* clearly enunciates a bifurcated test for determining whether charges for medical services claimed as items of special damages are supported by substantial evidence, i.e., (1) there must be substantial evidence that the charges themselves were reasonable and (2) there must be substantial evidence that the charges represent services which were reasonably necessary to treat, alleviate, or cure injuries sustained as a result of the accident or occurrence for which suit is brought. Admittedly, *Wise* recognizes that either may be established by reasonable inferences drawn from the evidence. See also *Hay v. Ham*, 364 S.W.2d 118 (Mo.App.1962), and *Sparling v. Hoard*, 380 S.W.2d 940 (Mo.App.1964), recognizing that substantial evidence that charges for services were reasonable could be inferred from payment. In the case sub judice, however, there was simply no evidence, much less substantial evidence, from which a jury could find or reasonably infer that the charges for services reflected by Plaintiff's Exhibits 3, 4, 7, 8, 9, and 11 represented the rendition of services reasonably necessary to treat, alleviate, or cure injuries purportedly suffered by Mrs. Briggs in the accident which occurred on March 15, 1974. Consequently, on this ground alone Baker shouldered his burden on appeal of supporting the action of the trial court in granting a new trial.

■ Admissibility of the disputed ordinance is entwined in a bizarre web of procedural events which must be unravelled at the outset. Counsel for Mrs. Briggs called the City Clerk of Brookfield, Missouri, as a witness to verify and prove up the ordinance in question. After doing so, a copy of the ordinance was marked as an exhibit and offered into evidence. At this juncture, counsel for Baker objected to its admission into evidence on the ground that the ordinance had not been validly enacted. Counsel for Baker (1) did not question the validity of the ordinance in his answer, nor (2) did he offer proof of any kind to support his objection. Neither of these matters was mentioned or raised at trial or briefed on appeal by either of the parties. A well established line of cases holds that failure to raise the invalidity of a pleaded ordinance at the "first open door", that is by way of a responsive pleading, precludes raising or questioning its validity when offered into evidence. *Roper v. Greenspon*,

272 Mo. 288, 198 S.W. 1107, 1108 (banc 1917); *Petty v. Kansas City Public Service Co.*, 354 Mo. 823, 191 S.W.2d 653, 657 (1945); and *Clark v. Trilinsky*, 170 S.W.2d 459, 461 (Mo.App.1943). Moreover, under existing law the ordinance was favored with a presumption that it had been validly enacted, *Reis v. Metropolitan St. Louis Sewer District*, 373 S.W.2d 22, 27 (Mo.1963), and the burden was on Baker to prove that it had not been validly enacted, *City of Moberly v. Deskin*, 169 Mo.App. 672, 155 S.W. 842, 843 (1913), and *Marks v. Bettendorf's, Inc.*, 337 S.W.2d 585, 590 (Mo.App.1960). Although the trial court overruled the objection lodged by counsel for Baker and admitted the ordinance into evidence, the basis for doing so is not disclosed by the record. Counsel for Mrs. Briggs, with leave of court and absent any objection from counsel for Baker, then proceeded to read the ordinance to the jury. There is no escape from the fact that doing so clearly implanted in the minds of the jury that Mrs. Briggs was relying on violation of the ordinance as a ground of actionable negligence.

Apparently out of an undue sense of apprehension or precaution, counsel for Mrs. Briggs, towards the close of her case, recalled the City Clerk of Brookfield to the witness stand. The City Clerk identified the journal of the City Council of the City of Brookfield containing the minutes when the ordinance in question was taken up for third reading and final passage. A copy thereof was numbered as an exhibit and offered and admitted into evidence at the request of counsel for Mrs. Briggs. The referred to exhibit disclosed, insofar as here pertinent, that all council members were present when the council meeting convened and that the ordinance in question on third reading and final passage "was considered and duly passed by unanimous vote." The ayes and nays were not entered in the journal. Counsel for Baker thereupon moved that the ordinance in question be "withdrawn" and that the jury be instructed "that they cannot consider ... [the ordinance] in their deliberation." Baker predicated his motion on the fact that the "ayes" and "nays" were not entered in the journal. The trial court denied the motion and refus-ed to withdraw the ordinance or instruct the jury as requested.

Baker contends that the journal offered into evidence by Mrs. Briggs showed on its face that the ordinance in question was not validly enacted. In support of his position he relies on that portion of Section 77.080, RSMo 1978, applicable to third class cities, which reads as follows: "[N]o bill shall become an ordinance unless on its final passage a majority of the members elected to the council shall vote therefor, *and the ayes and nays shall be entered on the journal*; ..." (Emphasis added.) The journal offered and admitted into evidence in this case clearly discloses on its face, with respect to passage of the ordinance in question, that the "ayes" and "nays" were not entered therein, but merely reflected that the ordinance "passed by unanimous vote". That portion of Section 77.080, RSMo 1978 (formerly Section 77.080, RSMo 1959), relied on by Baker was before the court in *City of Independence v. Hare*, 359 S.W.2d 33 (Mo. App.1962). After citing a number of Missouri cases, one of which was *Village of Beverly Hills v. Schulter*, 344 Mo. 1098, 130 S.W.2d 532 (1939), the court, with reference to the identical statutory language herein relied on by Baker, noted that it "has long been held to be a mandatory provision and failure to record the ayes and nays invalidates or makes incomplete the enactment of such ordinance." 359 S.W.2d at 36. It is obvious that the legislative rationale for such a mandatory provision is to unequivocally fix responsibility on each councilman as a matter of public record regarding the vote he casts on a particular ordinance. The obvious purpose of such a provision is to hold each councilman accountable to his constituency.

Counsel for Mrs. Briggs on oral argument attempted to mitigate the effect of the mandatory requirement of Section 77.080, RSMo 1978, by arguing that since the journal in question revealed that all council members were present when the meeting convened it should be presumed that all were present when the ordinance was voted on and that all voted aye because the journal disclosed that it was "unanimously passed". In *Village of Beverly Hills v.*

*Schulter, supra*, 130 S.W.2d at 536–37, dealing with a similar statutory provision applicable to towns and villages, and in *Steiger v. City of Ste. Genevieve*, 235 Mo.App. 579, 141 S.W.2d 233 (1940), dealing with a similar statutory provision applicable to cities of the fourth class, the respective courts refused to indulge in a presumption that councilmen who were shown by the minutes to have been present when a council meeting convened were still present and cast an aye vote in favor of an ordinance when the respective journal entries merely disclosed that the ordinance "passed unanimously by all of the trustees present" or that the ordinance "was unanimously adopted".

■ On the basis of the record on appeal, the ordinance in question was not validly enacted because the ayes and nays were not entered on the journal as mandated by Section 77.080, RSMo 1978. Moreover, no presumption arose from the meager journal entry to excuse noncompliance with the mandatory provision of Section 77.080, RSMo 1978. Counsel for Mrs. Briggs, albeit anomalously, supplied the proof that the ordinance had not been validly enacted. Counsel for Baker, however, albeit anomalously, relied solely on his objection to the initial admission of the ordinance into evidence and did not assign as error, either in his motion for new trial or on appeal, the trial court's denial of his subsequent motion to withdraw the ordinance and to instruct the jury that they could not consider it in their deliberations after proof came in that the ordinance had not been validly enacted.

One further observation is deemed appropriate to put this vexing question to rest in view of the procedural snarl in which it became entangled during trial and on appeal. Case authority exists in this and other states to the effect that traffic control devices, though having no de jure status by reason of an invalidly enacted ordinance, may nevertheless constitute de facto control devices whose violation may be pleaded and submitted to a jury under principles of common law negligence. See *Watson v. Long*,

221 S.W.2d 967 (Mo.App.1949); *Roberts v. Wilson*, 225 Mo.App. 932, 33 S.W.2d 169 (1930); *Clinkscales v. Carver*, 22 Cal.2d 72, 136 P.2d 777 (1943); *Malcom v. Dempsey*, 184 A.2d 474 (Del.Super.1962); *Geisking v. Sheimo*, 252 Iowa 37, 105 N.W.2d 599 (1960); *Comfort v. Penner*, 166 Wash. 177, 6 P.2d 604 (1932); *Warner v. Ambrose*, 53 Wash.2d 231, 332 P.2d 941 (1958); *Berendt v. Young*, 7 Wash.App. 299, 499 P.2d 77 (1972); Annot., 3 A.L.R.3d 180, 290 (1965). Recognition of the concept of de facto traffic control devices is rooted in common sense. This court empirically notes that motorists do not check "the records at city hall" to determine whether traffic control devices are based on validly enacted ordinances before relying upon or obeying them. To believe otherwise goes against the grain of human nature. Rejection of the concept of de facto traffic control devices would serve only to invite additional chaos and confusion in the regulation and movement of motor vehicle traffic, and would serve to compound rather than alleviate its built-in propensity for accidents.

The order of the trial court granting a new trial is affirmed; cause remanded for new trial.

All concur.