Lisa MENSCHIK, Appellant,

v.

HEARTLAND REGIONAL MEDICAL CENTER, et al., Respondents.

WD 79494

Missouri Court of Appeals, Western District.

Opinion filed: July 18, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied September 5, 2017

Application for Transfer Denied November 21, 2017

Herbert W. McIntosh, for Appellant.

Ronald D. Marney, Lloyd J. Bandy, Jr., for Respondents.

Before Division Two: Edward R. Ardini, Jr., Presiding Judge, Karen King Mitchell, Judge and Anthony Rex Gabbert, Judge

## EDWARD R. ARDINI, JR., JUDGE

Lisa Menschik (Menschik) appeals from a judgment for the Respondents on her claims of medical malpractice. Menschik argues that the trial court erred in denying admission of certain exhibits and limiting questioning of a defense expert, in making comments from the bench when ruling on objections, and in prohibiting testimony from her expert relating to the standard for performing a "stat" MRI. Finding no error, we affirm.

### Factual and Procedural Background

On March 22, 2010, Menschik presented at Heartland Clinic Comprehensive Family Care in St. Joseph complaining of severe pain radiating into her thoracic spine, chest, arms, and legs, as well as dysphagia. Menschik was seen by Dr. Robert Kempton, who took her history and ordered chest x-rays, laboratory testing, and CT scans of her cervical and thoracic spine and chest. Dr. Kempton sent Menschik to the radiology department at Heartland Regional Medical Center (HRMC) to undergo the CT scans. She was admitted to HRMC the same day for further treatment by Dr. Kempton after initial testing revealed a markedly elevated white blood count.

At HRMC, Menschik underwent radiological studies performed by Dr. Jose Alvarez. Dr. Alvarez interpreted Menschik's cervical CT scan as revealing prevertebral soft tissue swelling indicating possible abscess formation; however, metal implants in Menschik's neck from a previous procedure created artifacts that prevented him from accurately seeing on the CT scan an area of swollen tissue where a spinal epidural abscess was forming. Dr. Alvarez also interpreted Menschik's neck CT scan as showing a collection of fluid starting slightly above her Adam's apple and continuing down into her chest area, which he concluded to be a retrotracheal and retropharyngeal abscess, though he was unable to determine if the infection "tracked" from the neck to the chest or vice versa.

After learning of Dr. Alvarez's interpretations, Dr. Kempton requested consultations from other doctors including Dr. Robert Zink (a cardiothoracic surgeon), Dr. David Kropf (an otorhinolaryngologist, or ENT), and Dr. Brent Peterson (a neurosurgeon). Dr. Kropf and Dr. Zink examined Menschik that night and recommended surgery to drain the retrotracheal and retropharyngeal abscesses, while Dr. Peterson waited until the following morning to see her. Menschik underwent surgery to drain the abscesses followed by a second surgery to drain an anterior chest wall abscess and then finally a tracheostomy all performed by Dr. Zink and Dr. Kropf in the early hours of March 23. Menschik's condition deteriorated follow-

ing her surgery and she began to experience decreased sensation and progressive weakness in her lower extremities, eventually becoming unable to move her legs.

Dr. Peterson was notified of Menschik's deteriorating condition at approximately 6:45 a.m., prompting him to order an MRI. He received those results at 10:51 a.m. The MRI indicated a large disc herniation at C6-C7 with edema or epidural extension of an abscess that was compressing her spinal cord. He recommended surgery to clear the infection that was compressing Menschik's spinal cord, removal of the anterior cervical plates at the C4-C5 and C5-C6 levels, and an anterior cervical discectomy and fusion at the C6-C7 level. Surgery began at 3:56 p.m. and was completed without incident. Menschik was required to undergo physical therapy but eventually regained the ability to walk, though some complications remained.

Menschik filed suit against Dr. Alvarez, Dr. Kropf, and Dr. Peterson claiming that they had individually and cumulatively been responsible for the delay in the diagnosis and eventual surgery to drain her epidural abscess and that, as a result, she suffers present-day deficiencies. Specifically, she claimed that Dr. Alvarez had been negligent in failing to inform Dr. Kempton regarding the possibility that the retropharyngeal abscess was tracking into her spinal epidural space or that an MRI should be considered to exclude the possibility of a spinal epidural abscess; that Dr. Kropf was negligent in failing to obtain a complete medical history or perform an adequate neurological exam during the

evening of March 22; and that Dr. Peterson was negligent for failing to conduct a neurological exam in the early morning of March 23, failing to order a "stat" MRI as opposed to a routine MRI on the morning of March 23, and delaying surgery until later in the day to allow for his "A team" to assemble.[1] The case proceeded to trial beginning on November 4, 2015. The jury returned verdicts for the Respondents. Menschik now appeals.

### Testimony of Dr. Paul Young

Menschik's first point raised on appeal concerns her effort to impeach the testimony of defense expert Dr. Paul Young, a neurosurgeon from St. Louis, who testified to the standard of care owed Menschik and whether that standard had been breached by the Respondents. At trial, Menschik sought to show that Dr. Young harbored a bias against medical malpractice plaintiffs resulting from being a defendant in multiple such lawsuits during his career. She also attacked Dr. Young's character for truth and veracity based on Menschik's belief that he had understated the total number of medical malpractice lawsuits that had been brought against him. To that end, there was extensive cross-examination into Dr. Young's history of medical malpractice suits from his former practice in California, his failed attempt to obtain a license to practice medicine in Colorado, and the details surrounding the expiration of his California medical license.[2] At the conclusion of the cross-examination, Menschik moved to admit two exhibits: an Accusation filed against Dr. Young by the

---

1. Menschik also alleged, but did not submit to the jury, claims that HRMC breached the duty of care owed to her by not having a "stat" MRI ordered; not obtaining or providing prompt and timely surgical intervention for her emergent condition or treating her compressed spinal cord in light of her deteriorating condition; and/or not having the proper rules, regulations, policies, or protocols, or

not enforcing those that existed in order to ensure that patients in her situation receive prompt surgical intervention for an emergent condition.

2. Dr. Young's cross-examination accounts for nearly sixty pages of the transcript submitted on appeal.

California Board of Medical Quality Assurance seeking to discipline his license that included allegations related to malpractice suits brought by three former patients (Plaintiff's Exhibit 145), and the subsequent Decision and Stipulation entered into between Dr. Young and the California Board of Medical Quality Assurance in which Dr. Young agreed not to renew his California medical license and to forgo reapplication for five years in exchange for the withdrawal of the Accusation (Plaintiff's Exhibit 146). The trial court denied the admission of both documents.

■ In her first point on appeal, Menschik claims two distinct errors relating to Dr. Young's testimony: (A) the trial court erred in denying admission of Plaintiff's Exhibits 145 and 146, and (B) the trial court erred in denying Menschik the opportunity, on recross-examination, to question Dr. Young regarding the details of the medical malpractice allegations included in Plaintiff's Exhibits 145 and 146.[3] We review the decision of a trial court to admit or exclude evidence for an abuse of discretion. *Cox v. Kansas City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 114 (Mo. banc 2015). "An evidentiary ruling is an abuse of discretion only if it is 'clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration.'" *Reed v. Kansas City Missouri School District*, 504 S.W.3d 235, 240 (Mo. App. W.D. 2016) (quoting *Cox*, 473 S.W.3d at 114). "Moreover, in reviewing the exclusion of evidence in general, this court is not bound 'by the rationale for the objection made or the reasons expressed by the trial court for excluding the evidence.'" *Hemeyer v. Wilson*, 59

S.W.3d 574, 580 (Mo. App. W.D. 2001) (quoting *Aliff v. Cody*, 26 S.W.3d 309, 314–15 (Mo. App. W.D. 2000)). Consequently, we will uphold the trial court's ruling "when there exists any recognizable ground on which the trial judge could have rejected the evidence." *Wilson*, 59 S.W.3d at 580 (quoting *Cody*, 26 S.W.3d at 315).

### A. Plaintiff's Exhibits 145 and 146.

We begin our analysis with the trial court's ruling denying admission of Plaintiff's Exhibits 145 and 146. Menschik argues that the trial court erred because these exhibits were admissible to establish Dr. Young's bias, impeach his character for truth or veracity as prior inconsistent statements, and as contradiction evidence. We will consider each of these arguments individually.

### i. Bias

■ It is well settled under Missouri law that a witness may be impeached on cross-examination through the use of evidence demonstrating the witness's bias, interest, or prejudice. *Mitchell v. Kardesch*, 313 S.W.3d 667, 676 (Mo. banc 2010). A witness's bias or interest toward a party is never irrelevant and a witness may be cross-examined on any point, whether material to the substantive issue of the trial or not, if it shows the existence of bias. *Id.* In the present case, Menschik attempted to demonstrate that Dr. Young held a bias against medical malpractice plaintiffs generated from having been repeatedly sued for committing medical malpractice himself. In order to prove the existence of this bias, Menschik questioned Dr. Young at length regarding these prior lawsuits. On appeal, she argues that Plaintiff's Exhibits

---

**3.** "Multiple claims of error in one point relied on render the point 'multifarious' and violate Rule 84.04." *Fastnacht v. Ge*, 488 S.W.3d 178, 184 (Mo. App. W.D. 2016). As such, these points are not preserved for review and are thus subject to dismissal. *Id.* However, we elect to address the distinct issues raised in this point *ex gratia*.

145 and 146 should have been admitted as further proof of Dr. Young's bias.

At trial, Dr. Young initially asserted that he had only been sued five times for medical malpractice. However, Menschik was permitted, over Respondent's objection, to question Dr. Young regarding an interrogatory response filed in a malpractice case brought in California in which he stated that he had previously been sued nine times. Dr. Young did not deny this disparity but sought to explain it by stating that many of those suits had been brought because an ex-partner he had worked with in California, named Dr. George Stevenson ("Stevenson"), had set out to destroy him by contacting former patients and encouraging them to file lawsuits. Dr. Young stated that those actions had failed to proceed anywhere and maintained that he was aware of only five lawsuits that he felt fit the description of a malpractice action that, in his view, personally involved him.

Menschik also questioned Dr. Young regarding statements made in his application to practice medicine in Colorado. This application was completed after the interrogatory in the California case had been filed and included additional lawsuits bringing the number of medical malpractice cases against him to fourteen. The application further acknowledged that his malpractice insurance had been canceled due to the number of malpractice lawsuits filed against him. Menschik continued questioning Dr. Young regarding the various medical malpractice cases that had been brought against him over the years with the number eventually rising to a total of twenty-three. At no point did Dr. Young deny being involved in any of these lawsuits, stating instead that he was "sure his name had appeared on many things filed against the various hospitals he had worked for that never reached his level of attention" but that "five was the number that he felt actual responsibility for."

On appeal, Menschik argues that Plaintiff's Exhibits 145 and 146, which disclosed the *details* surrounding three of the lawsuits discussed on cross-examination, should have been admitted as additional evidence of Dr. Young's bias. This argument is without merit given that Menschik's theory of Dr. Young's bias was not based on the specifics of a particular prior lawsuit or on a connection or similarity between Menschik's case and any of the prior lawsuits but instead was premised on an alleged prejudice against plaintiffs in medical malpractice cases in general derived from the volume of lawsuits brought against him over the years.[4] Therefore, the specific details of the individual malpractice cases laid out in these exhibits were irrelevant to Menschik's theory of bias. *State v. Roper*, 136 S.W.3d 891, 899 (Mo. App. W.D. 2004) (Trial court did not err in denying admission of evidence offered to show bias of witness after defendant failed to show how evidence was relevant to establishing that bias.); *Carlisle v. Kroger Co.*, 809 S.W.2d 23, 27 (Mo. App. E.D. 1991) ("[I]mmaterial and incompetent evidence may not be brought before the jury under the guise that it impeaches or discredits the witness.") (quoting *Weatherly v. Miskle*, 655 S.W.2d 842, 844 (Mo. App. E.D. 1983)). In addition, to the extent that these exhibits could provide further evidence of the *number* of times Dr. Young had been sued for malpractice, which is relevant under Menschik's bias theory, these exhibits were cumulative as Menschik herself admits that the cases listed in

---

4. Menschik explicitly asked Dr. Young at one point on cross examination whether "getting sued for malpractice 17 different times cause[d] [him] to be biased against plaintiffs like Lisa Menschik?" and then later asked him again if "getting sued 23—in 23 different malpractice suits cause[d] [him] to be biased against the plaintiff?"

these exhibits were among those she had already questioned Dr. Young about during cross-examination.[5] *See Benedict v. Northern Pipeline Const.*, 44 S.W.3d 410, 425–26 (Mo. App. W.D. 2001) (Trial court did not err in denying admission of a list of cases in which defendant's expert witness had testified which was found to be clearly cumulative given that Plaintiff questioned the expert extensively about the list on cross examination.); *Burns v. Elk River Ambulance, Inc.*, 55 S.W.3d 466, 483 (Mo. App. S.D. 2001) (Trial court did not err in denying admission of ambulance bill given that witness testified to the contents of the bill and it was thus reasonable for the trial court to consider the bill to be cumulative.). *Destin v. Sears, Roebuck and Co.*, 803 S.W.2d 113, 116 (Mo. App. W.D. 1990) (Trial court did not err in excluding results of thermography test and testimony of chiropractor on those results even if chiropractor's testimony was relevant and admissible because testimony of plaintiff and plaintiff's surgeon made chiropractor's testimony cumulative.). Consequently, we cannot find it was an abuse of discretion for the trial court to exclude this evidence.

### ii. Prior Inconsistent Statements

■ We next consider Menschik's argument that Plaintiff's Exhibits 145 and 146 were admissible as prior inconsistent statements. We begin by noting that this is not an argument that Menschik raised to the trial court when seeking to admit these exhibits. This presents a considerable dilemma as "[a] point is preserved for appeal only if it is based on the same theory presented at trial." *Central Trust Bank v. Graves*, 495 S.W.3d 797, 801 (Mo. App. W.D. 2016) (quoting *Blanks v. Fluor Corp.*, 450 S.W.3d 308, 383 (Mo. App. E.D. 2014)). As such, parties are not permitted to advance new theories for the admission of

evidence on appeal, nor are they allowed to alter or broaden the theories raised before the trial court. *Id.* The importance of this prohibition can easily be seen in the present case where there is no indication on the face of the trial transcript what inconsistencies in Dr. Young's testimony Menschik would have sought to impeach using these exhibits. Instead, we must rely on Menschik's argument on appeal, which points to a single remark in Dr. Young's testimony that she claims she *would* have presented to the jury as inconsistent with a statement contained in Plaintiff's Exhibits 145 and 146. We are thus being asked to convict the trial court of an error that was not put before it to decide; something that we are generally loathe to do. *Id.* Nevertheless, we will deign to consider the merits of Menschik's argument as we find that Menschik has wholly failed to offer an explanation for how the foundational requirements for use of a prior inconsistent statement were met.

■ It is a basic legal principle that a witness's credibility may be impeached based on the use of prior inconsistent statements. *Mitchell v. Kardesch*, 313 S.W.3d 667, 676 (Mo. banc 2010). However, it is necessary that a proper foundation be laid before extrinsic evidence may be used to impeach in this manner. *Aliff v. Cody*, 26 S.W.3d 309, 318 (Mo. App. W.D. 2000). In order to establish that foundation, the party seeking to introduce the prior statement must first "ask the witness whether he or she made the statement, quote the statement, and point out the precise circumstances under which it was allegedly made, including to whom the witness spoke and the time and place of the statement." *Id.* The witness must then "be given a chance to refresh his recollection of the prior statement and to admit, deny, or

---

**5.** Although Plaintiff's Exhibits 145 and 146 were not admitted at trial, they were extensively used and referenced during Dr. Young's cross-examination.

explain it." *Litton v. Kornbrust*, 85 S.W.3d 110, 114 (Mo. App. W.D. 2002) (quoting *Nichols v. Preferred Risk Group*, 44 S.W.3d 886, 892 (Mo. App. S.D. 2001)). If the witness admits to his prior inconsistent or contradictory statement, further proof is unnecessary and inadmissible, as the witness has, by his own admission, already impeached himself. *Id.*; *Maloy v. Cabinet & Bath Supply, Inc.*, 187 S.W.3d 922, 926 (Mo. App. S.D. 2006).

As an initial matter, we find that only one of the two exhibits in question can reasonably be construed as a prior statement of Dr. Young. Plaintiff's Exhibit 145, a pleading filed by the California Board of Medical Quality Assurance, is clearly not a statement of Dr. Young and therefore no further analysis is necessary, as it is axiomatic that a witness cannot be impeached on the basis of a prior inconsistent statement where the witness did not make the prior statement.[6] *See State v. Duncan*, 397 S.W.3d 541, 544 (Mo. App. E. D 2013) (Trial court erred in permitting the State to impeach a defense witness with the prior statement of another.).

Plaintiff's Exhibit 146 must suffer a similar fate for a different reason. Menschik argues that Dr. Young's testimony that his California medical license "expired" was inconsistent with a statement contained in Plaintiff's Exhibit 146 that says his California license was "in a canceled status due to non-payment of fees." However, a review of the transcript shows that Dr. Young was never confronted with any statement made in Plaintiff's Exhibit 146 regarding the status of his medical license; asked about the circumstances under which it was made; or given the opportunity to admit, deny, or explain it. Because Menschik failed to lay the necessary foundation for the use and admission of Plaintiff's Exhibit 146 as a prior inconsistent statement, this theory of impeachment provides no basis to argue its admissibility. *See Preferred Risk Group*, 44 S.W.3d at 892-93 (Trial court did not err in refusing to admit testimony demonstrating prior inconsistent statement as proper foundation was not laid.); *K.J.B. v. C.A.B.*, 883 S.W.2d 117, 120 (Mo. App. W.D. 1994) (Argument that testimony was admissible to impeach a witness's credibility was unfounded because witness was not questioned about the alleged prior inconsistent statement.); *Johnson v. National Super Markets, Inc.*, 752 S.W.2d 809, 812 (Mo. App. E.D. 1988) (Court properly refused to admit evidence to impeach witness's credibility as proper foundation for use of inconsistent statements was not laid.).

### iii. Contradiction

Menschik's final argument for the admissibility of Plaintiff's Exhibits 145 and 146 is that they were admissible to contradict Dr. Young's testimony that the multiple lawsuits relating to his California practice were instigated on the urging of his ex-partner, Dr. Stevenson. As with her previous argument for admission of the exhibits as inconsistent statements, Menschik did not raise contradiction as a grounds for admission to the trial court, and thus this point is not preserved for appeal. *Central Trust Bank v. Graves*, 495 S.W.3d 797, 801 (Mo. App. W.D. 2016). However, as before, we will generously review Menschik's argument on its merits.

---

**6.** In addition, it is questionable whether Plaintiff's Exhibit 146, the decision of the California Board of Medical Quality Assurance and incorporated Stipulation between the Board and Dr. Young, qualifies as a prior statement of Dr. Young. We need not make a determination on this issue; however, as it is clear from the record that Menschik failed to lay the necessary foundation for the admission of this exhibit as a prior inconsistent statement.

During the trial, Dr. Young testified that he had moved to California to set up practice at the invitation of Dr. Stevenson, who he had met while performing his fellowship in Zurich. Once he moved to California, he discovered that Dr. Stevenson was, in his words, a "psychopath." Dr. Young further testified that when he later informed Dr. Stevenson of his decision to leave California, Dr. Stevenson set out to destroy him. This included sending a letter to all of Dr. Young's patients recommending that they call an attorney and initiate malpractice suits against him. Dr. Young claimed that many of the suits filed against him in California were the result of Dr. Stevenson's efforts. Menschik now argues that Plaintiff's Exhibits 145 and 146 were admissible to contradict Dr. Young's testimony on the subject of the role played by Dr. Stevenson in the bringing of these lawsuits.

▮▮▮▮▮ Unlike impeachment, which concerns an attack on the credibility of a witness and usually does not furnish new evidence, contradiction is directed toward attacking the accuracy of a witness's testimony by supplying additional contradictory factual evidence. *Mitchell v. Kardesch*, 313 S.W.3d 667, 675 n. 4 (Mo. banc 2010); *Talley v. Richart*, 353 Mo. 912, 185 S.W.2d 23, 26 (Mo. 1945); *Frazier v. City of Kansas*, 467 S.W.3d 327, 341 (Mo. App. W.D. 2015). As a general rule, a party is not permitted to contradict a witness's testimony on collateral matters. *Frazier*, 467 S.W.3d at 341; *State ex rel. Williams v. Lohmar*, 162 S.W.3d 131, 134 (Mo. App. E.D. 2005); *Cline v. William H. Friedman & Associates, Inc.*, 882 S.W.2d 754, 760 (Mo. App. E.D. 1994). The purpose of "this rule is to shield the jury from a proliferation of issues which would require the court to go into the merits of such collateral matters and to avoid the unfairness and surprise of requiring the opposing party to disprove issues not raised by the pleadings." *Cline*, 882 S.W.2d at 760. Whether or not a matter is collateral depends on "whether the party seeking to introduce it for purposes of contradiction would be entitled to prove it as a part of his case." *Id.*

▮▮▮▮▮ Menschik argues that Plaintiff's Exhibits 145 and 146 did not concern collateral matters because they were being introduced for the purpose of attacking Dr. Young's credibility. This argument illustrates a fundamental misunderstanding regarding contradiction evidence. The purpose of contradiction evidence is to refute *facts* testified to by a witness, not to challenge his or her *credibility*.[7] *Kardesch*, 313 S.W.3d at 675 n. 4; *Richart*, 185 S.W.2d at 26; *Frazier*, 467 S.W.3d at 341. Thus, in determining whether or not a matter is collateral for the purposes of contradiction evidence, we look to the facts being intro-

---

**7.** Contradiction evidence has the effect of impeaching a witness's credibility. *Waters v. Barbe*, 812 S.W.2d 753, 757 (Mo. App. W.D. 1991) ("Contradicting a witness's testimony, however, inherently involves some impeachment because any conflicting evidence calls into question the reliability of that person's memory, observation or honesty. Consequently, a party offering evidence only to contradict a witness's testimony will unavoidably and incidentally impeach that witness."). However, while contradiction evidence may have this *effect*, it cannot be introduced for this *purpose.* This distinction is crucial to understanding the difference between these two types of evidence. *See id.* (Because evidence was introduced for the *purpose* of contradiction and not impeachment, it did not violate rule against impeaching a party's own witness even though the *effect* of the contradiction evidence incidentally impeached the witness.). If we were to adopt Menschik's argument that contradictory evidence may be used for the purpose of impeaching a witness's credibility then the rule prohibiting contradiction of collateral matters would be rendered null as contradiction always effects credibility and a witness's credibility is always relevant. *See Mitchell v. Kardesch*, 313 S.W.3d 667, 675 (Mo. banc 2010).

duced by the party seeking to contradict. In this case, the facts that Menschik sought to introduce, the details surrounding Dr. Young's prior malpractice suits, were unrelated to the medical malpractice alleged to have been committed against her by the Respondents. Dr. Young's prior malpractice history was not relevant to proving her allegations and was therefore a collateral matter and inadmissible as contradiction evidence.

Having considered the arguments relating to Plaintiff's Exhibits 145 and 146, we conclude that the trial court did not abuse its discretion in denying their admission.

## B. Recross-examination of Dr. Young

We now turn to the second half of Menschik's first point on appeal, her argument that the trial court erred in denying the opportunity, on recross-examination, to question Dr. Young on the details of the three specific claims of malpractice discussed in Plaintiff's Exhibits 145 and 146. A review of the record compels our rejection of this argument, as Menschik failed to make an offer of proof regarding what testimony she sought to elicit and thus failed to preserve this point for appeal.

Following extensive cross-examination, Dr. Young was questioned on re-direct examination regarding the events that transpired in California involving his ex-partner Dr. Stevenson. On recross-examination, Menschik posed a question to Dr. Young seeking to determine if he had made the same claims involving his ex-partner to the Colorado Medical Board when he was applying for a Colorado medical license. When Dr. Young submitted that he had, he was asked whether the Colorado Medical Board had investigated these claims. Respondents objected arguing that the question called for speculation and was irrelevant. The trial court sustained the objection, and Menschik made no further attempts to question Dr. Young

with respect to Dr. Stevenson or make an offer of proof. On appeal, Menschik claims that she would have questioned Dr. Young about the claims of malpractice listed in Plaintiff's Exhibits 145 and 146 to refute his assertion that these suits were brought because of the machinations of Dr. Stevenson by showing that they were in fact meritorious.

"[I]n order to preserve an argument that evidence was improperly excluded at trial for appeal, the proponent of that evidence is required to make an offer of proof." *Mansfield v. Horner*, 443 S.W.3d 627, 649 (Mo. App. W.D. 2014) (quoting *KRP ex rel. Brown v. Penyweit*, 219 S.W.3d 829, 836 (Mo. App. W.D. 2007)). The purpose of making such an offer is "to inform the trial court about the content of the proffered evidence and to allow an appellate court to assess the prejudicial effect of the exclusion." *Giles v. Riverside Transport, Inc.*, 266 S.W.3d 290, 299 (Mo. App. W.D. 2008). To that end, the offer of proof must lay out: "(1) what the proffered evidence would be; (2) its object and purpose; and (3) all the facts necessary to establish its relevance and admissibility." *Key v. Diamond International Trucks*, 453 S.W.3d 352, 362 (Mo. App. W.D. 2015) (quoting *Calzaretta v. Willard*, 391 S.W.3d 488, 493 (Mo. App. S.D. 2013)). It is the burden of those seeking to introduce the evidence to make the offer of proof. *Giles*, 266 S.W.3d at 299. Should the party seeking to introduce the evidence fail to make the offer of proof, then nothing is preserved for review and the claim of error must be dismissed. *Reed v. Kansas City Missouri School District*, 504 S.W.3d 235, 243 (Mo. App. W.D. 2016).

In the present case, there is no question that Menschik failed to make an offer of proof in response to the objections raised during her recross-examination of Dr. Young. As such, her claim of error is

unpreserved and must be dismissed. Further, unlike the previous alleged errors wherein this court has endeavored to contemplate the merits despite the lack of preservation, here we are functionally prevented from doing so as we are entirely without knowledge of what testimony would have been elicited on these points, including what explanations Dr. Young may have given, and are thus unable to determine whether the court erred in sustaining the Respondents' objection let alone determine what prejudicial effect may have arisen, if any, from such an error.

Menschik's first point is denied.

### Comments by the Bench

Menschik's second point on appeal contends that the trial court abused its discretion by making "comments" from the bench when ruling on certain objections during the testimony of Dr. Peterson. At three separate times during the lengthy cross-examination of Dr. Peterson, Menschik moved to strike the witness's answer for being non-responsive. The trial court overruled the motion in each instance, stating that it found the witness was being responsive. The three occurrences were as follows:

> PLAINTIFF COUNSEL: And move to strike that portion of his answer that wasn't responsive to my question.
>
> THE COURT: Overruled. I thought it was responsive to the question, so denied
>
> . . .
>
> PLAINTIFF COUNSEL: Move to strike his answer as nonresponsive.
>
> THE COURT: Motion is denied. I think he is responding to the question you asked.
>
> . . .

> PLAINTIFF COUNSEL: Objection, Your Honor.
>
> THE COURT: Excuse me. He's answering the question, [Plaintiff Counsel].
>
> PLAINTIFF COUNSEL: He's not answering that question.

Menschik argues that by making these comments, the trial court conveyed to the jury its opinion regarding the credibility of the witness.

 Because Menschik failed to raise a timely objection to the trial court's statements during the trial, these alleged errors are not preserved for review.[8] *Riggs v. State Department of Social Services*, 473 S.W.3d 177, 186 (Mo. App. W.D. 2015) ("[P]rejudicial remarks made by the court must be seasonably objected to or the question will not be ordinarily reviewed on appeal.") (quoting *Libby v. Hill*, 687 S.W.2d 264, 267 (Mo. App. W.D. 1985)). However, we may, at our discretion, review such unpreserved claims for plain error. *Id.* "Plain error review is 'limited to a determination of whether there is plain error affecting substantial rights resulting in manifest injustice or a miscarriage of justice.'" *Id.* (quoting *Williams v. Jacobs*, 972 S.W.2d 334, 346 (Mo. App. W.D. 1998)). "We will reverse for plain error in civil cases only in those situations when the injustice of the error is so egregious as to weaken the very foundation of the process and seriously undermine confidence in the outcome of the case." *Id.* (quoting *Snellen ex rel. Snellen v. Capital Region Medical Center*, 422 S.W.3d 343, 357 (Mo. App. W.D. 2013)).

 A trial court has a duty to avoid conduct that may be construed as favoring either party and must maintain a neutral attitude throughout the trial. *Snel-*

---

8. Menschik argues in her initial Brief that this point is subject to an abuse of discretion review. However, she concedes in her Reply Brief that she failed to preserve this issue for appeal and that plain error is the proper standard for review.

*len*, 422 S.W.3d at 358; *Hawkins v. Compo*, 781 S.W.2d 128, 131 (Mo. App. W.D. 1989). It is improper for a trial court to give its opinion on the merits of a case or the credibility of a witness who is testifying. *Nolting v. Petersen*, 404 S.W.2d 410, 414 (Mo. App. 1966). This does not mean however that a judge is to be a "stone statue." *Riggs*, 473 S.W.3d at 188.

■ Menschik's argument that her case was prejudiced by the trial court's comments is without merit. The trial court's responses did not communicate an opinion as to the *credibility* of the witness, *i.e.* whether he was truthful or not, but merely stated that the witness's answers were responsive to the questions presented. The trial court's comments stated explicitly what would otherwise have been implicit if it had simply overruled Menschik's motion to strike. Because the trial court's statements did not express an opinion as to the credibility of the witness and instead laid out the trial court's rationale in a neutral manner, there exists no basis to conclude that those comments served to prejudice the minds of the jury and deprive Menschik of a fair trial. *See Schonlau v. Terminal R. Ass'n of St. Louis*, 357 Mo. 1108, 212 S.W.2d 420, 423–24 (Mo. 1948) (Judge's comments during cross-examination including "I think the witness is trying to explain, I will overrule the objection" could not be reasonably inferred to have prejudiced the jury.); *McLain v. Atlas Assur. Co., Ltd., of London, England*, 67 S.W.2d 849, 854 (Mo. App. 1934) (No merit in defendant's claim that the court improperly commented on evidence when it "admonished defendant's counsel to quit asking his witness leading questions and also to quit interrupting him and to quit repeating questions, and advised that the best way to find out what happened was to let the witness tell what was said."); *Heier v. Funsch*, 61 S.W.2d 253, 257 (Mo. App. 1933) (Trial court's statement "he was endeavoring to answer your question[,] [a]sk him another question" and comment to plaintiff's counsel that not all questions can be answered "yes" or "no" made after counsel complained witness was not being responsive was not error.).

Menschik's second point is denied.

### Testimony of Dr. Patten

Menschik's third point on appeal alleges that the trial court erred in prohibiting the testimony of her expert, Dr. Randall Patten, relating to the performance of a "stat" MRI. Dr. Patten was called to provide testimony regarding the various radiological tests performed on Menschik, his interpretation of the results of those tests, and the standard of care owed Menschik and whether the Respondents had met that standard. During his testimony, Dr. Patten was asked about the standard for timely performing a "stat" MRI. The Respondents objected, arguing a lack of foundation and relevancy. The trial court sustained the objection and permitted Menschik to make an offer of proof. In the offer of proof, Dr. Patten testified, in part, as follows:

Q. With regard to a stat MRI, are you aware of—I guess you would call it the national standard with regard to how quickly that gets done?

A. Well, essentially when you have a stat MR[I] you try to do it immediately if at all possible, so you try to do it as quickly as humanly possible.

Q. Okay. And is a four-hour delay between the time that it's ordered or a three-hour delay between the time that it's ordered to the time that it's given, is that within that standard?

A. That seems to be a fairly long period of time. It depends upon the circumstances I assume. But it would generally be expected to be completed before that, before a three-hour or four-hour window.

Menschik now argues that the trial court erred in excluding this testimony from Dr. Patten.

■ We review the decision of the trial court to admit or exclude expert testimony for an abuse of discretion. *Spalding v. Stewart Title Guaranty Company*, 463 S.W.3d 770, 778 (Mo. banc 2015). "The trial court abuses its discretion when a ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Adkins v. Hontz*, 337 S.W.3d 711, 719 (Mo. App. W.D. 2011) (quoting *State v. Broussard*, 57 S.W.3d 902, 911 (Mo. App. S.D. 2001)). Further, we will only reverse a judgment if we find that the error committed by the trial court affected the merits of the action. *Id.*

■ The trial court sustained the objection, noting that Dr. Patten had not worked in a hospital setting for ten years and there was no indication that "he even knows the practices of what's available today ..." relating to the standards of performing a "stat" MRI. Nothing in the offer of proof addressed the foundational deficiencies facing Dr. Patten's testimony raised by the trial court, nor can this Court glean from the remainder of Dr. Patten's trial testimony the necessary foundational predicate to rebut the trial court's observation. As a result, we cannot conclude, based on the record before us, that the trial court abused its discretion in denying the admission of this testimony. *Urness v. Urness*, 846 S.W.2d 203, 205–06 (Mo. App. E.D. 1992) ( trial court did not abuse its discretion in denying admission of expert witness testimony after it requested party to present further foundation and party made no attempt to comply).

■ Moreover, a close examination of the offer of proof reveals that Dr. Patten's proffered testimony would not have established a "standard" for timely performing a "stat" MRI, as he stated the length of time necessary to perform a "stat" MRI "depends upon the circumstances" of each case and was thus situationally dependent. Because the standard that Dr. Patten put forth in the offer of proof for a timely performance of a "stat" MRI was, in part, dependent on a patient's condition, the excluded testimony suffers from additional relevance-based problems because the offer of proof did not connect the "standard" for performing a "stat" MRI to a patient in Menschik's specific situation. Instead, Dr. Patten was simply asked if a three-hour to four-hour delay fell within the "standard" for performing a "stat" MRI to which he responded that it would *"generally* be expected to be completed before that." This generalized testimony lacked probative value for a trier of fact tasked with assessing whether the specific treatment provided to Menschik failed to meet the standard of care owed to her.[9] Therefore, Menschik has also failed to establish that she was prejudiced by the trial court's denial of the admission of the excluded testimony of Dr. Patten.

Menschik's third point is denied.

9. A "stat" MRI was never ordered for Menschik. Nevertheless, whether the failure to order a "stat" MRI or whether any delay in performing the MRI on Menschik fell below the standard of care owed to her was clearly relevant to this case. However, based on the offer of proof, Dr. Patten's testimony regarding the timely performance of a "stat" MRI would have merely provided that the "standard" for timely performing a "stat" MRI "depended on the circumstances" of the specific patient. There is nothing contained in the offer of proof to indicate that Dr. Patten's testimony would have applied this "standard" to Menschik's "circumstances" which, assuming that the previously discussed foundational deficiencies had been addressed, would have been relevant evidence in this case.

## Conclusion

The judgment of the trial court is affirmed.

All concur.