

## Missouri Court of Appeals
### Southern District

#### In Division

STATE OF MISSOURI, )
)
        Respondent, )
) No. SD37372
v. )
) **Filed: April 19, 2024**
JERRY STUDDARD, )
)
        Appellant. )

APPEAL FROM THE CIRCUIT COURT OF OZARK COUNTY

Honorable R. Craig Carter, Judge

**AFFIRMED**

A jury in Ozark County found Appellant Jerry Studdard guilty of two counts of statutory sodomy in the first degree. Studdard appeals, raising eight points of trial court error.

### Deficient Briefing

As an initial matter, we address Studdard's appellate brief, which significantly fails to comply with the mandatory form and content requirements of Rule 84.04.[1] ***State v. Minor***, 648 S.W.3d 721, 727 (Mo. banc 2022). Studdard's brief violates the rule with an incomplete statement of facts, multifarious points relied on, and deficient legal

---

[1] All rule references are to Missouri Court Rules (2022).

arguments. "Deficient briefing runs the risk of forcing [the appellate court] to assume the role of advocate by requiring [the Court] to sift through the legal record, reconstruct the statement of facts, and craft a legal argument on the appellant's behalf." *Id.* (second alteration in original) (quoting *Murphree v. Lakeshore Ests., LLC*, 636 S.W.3d 622, 624 (Mo.App. 2021)). "We cannot comb the legal file for facts to better understand [Appellant's] argument, nor can we do so and remain steadfast to our role as the neutral arbiter of the case." *Hicks v. Northland-Smithville*, 655 S.W.3d 641, 649 (Mo.App. 2022) (internal punctuation and citation omitted). Deficient briefing preserves nothing for appellate review. *State v. Murphy*, 665 S.W.3d 377, 380 (Mo.App. 2023).

Yet, "it is the policy of this court to decide cases on the merits whenever possible." *Jackson v. Barton*, 548 S.W.3d 263, 267 n.3 (Mo. banc 2018) (citation omitted). "While not condoning noncompliance with the rules, a court will generally, as a matter of discretion, review on the merits where disposition is not hampered by rule violations." *Id.* (citation omitted). Therefore, despite the glaring deficiencies in Studdard's brief on appeal, and with the assistance of the State's well-organized brief, we exercise our discretion to review the case on the merits. We affirm.

Studdard's points on appeal fall into three broad categories: 1) sufficiency of the evidence;[2] 2) testimony and statements excluded or admitted after objections based on privilege or hearsay; and 3) evidence of prior unadjudicated acts or propensity evidence.

### Sufficiency of the Evidence (Points I and II)

Studdard's first two points on appeal challenge the trial court's denial of two

---

[2] We note that as a general rule, sufficiency of evidence claims on appeal in a criminal case will be reviewed on their merits even if "not properly briefed." *State v. Claycomb*, 470 S.W.3d 358, 361-62 (Mo. banc 2015), *as modified* (Aug. 4, 2015).

motions: for judgment of acquittal at the close of the State's evidence (Point I) and for judgment of acquittal at the close of all the evidence (Point II). Studdard argues in both points that the verdicts were not supported by sufficient evidence to establish guilt beyond a reasonable doubt and the weight of the evidence was against the verdicts. Both points suggest the evidence is "circumstantial and contradictory" and does not demonstrate "the requisite specific intent."

As to Point I, the record demonstrates that Studdard moved for judgment of acquittal at the close of the State's evidence. On this point, Studdard waived any error in the trial court's denial of the motion for acquittal at the close of the State's evidence by thereafter presenting evidence. ***State v. Hansen***, 660 S.W.3d 45, 49 (Mo.App. 2023).

In Point II, Studdard makes the same arguments (insufficient evidence to support the verdict and to demonstrate specific intent) as in Point I, except that he claims the error occurred in the trial court's denial of his motion for judgment of acquittal at the close of all the evidence.

We note at the outset of the discussion that an appellate court must not engage in a weight-of-the-evidence review in a criminal appeal. ***State v. Gannaway***, 497 S.W.3d 819, 823 (Mo.App. 2016). Thus, despite Studdard's erroneous claim that the weight of the evidence does not support the verdict, our review is for sufficiency of the evidence only. ***Id.*** In reviewing such challenges, we consider "whether the State has introduced sufficient evidence from which a reasonable juror could have found each element of the crime beyond a reasonable doubt." ***State v. Ajak***, 543 S.W.3d 43, 46 (Mo. banc 2018) (quoting ***State v. Hunt***, 451 S.W.3d 251, 257 (Mo. banc 2014)). We must accept as true all evidence favorable to the State, including all favorable inferences drawn from the evidence, and we must disregard all contrary evidence and inferences. ***State v. Dulany***,

3

781 S.W.2d 52, 55 (Mo. banc 1989), *as modified* (Dec. 12, 1989). On appellate review, we give great deference to the trier of fact, **State v. Jones**, 479 S.W.3d 100, 105 (Mo. banc 2016), but will not "supply missing evidence or grant the State unreasonable, speculative, or forced inferences." **State v. Smith**, 551 S.W.3d 60, 62 (Mo.App. 2018) (quoting **Ajak**, 543 S.W.3d at 46). "An appellate court 'will not weigh the evidence anew since the fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case.'" **State v. Ingalsbe**, 557 S.W.3d 515, 519 (Mo.App. 2018) (quoting **State v. Freeman**, 269 S.W.3d 422, 425 (Mo. banc 2008)). Credibility determinations "are the province of the trier of fact." **State v. Porter**, 439 S.W.3d 208, 212 (Mo. banc 2014). A jury is "in a better position not only to judge the credibility of the witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." **Id.** (quoting **Essex Contracting, Inc. v. Jefferson Cnty.**, 277 S.W.3d 647, 652 (Mo. banc 2009)).

Studdard contends the judgment is not supported by substantial evidence, because the State proffered no physical evidence to prove its case and the victim's inconsistent and contradictory testimony was not credible. These arguments fail as a matter of law. Studdard asks us to reassess the credibility of a witness, which, as explained in the preceding paragraph, is prohibited. Furthermore, "[t]he testimony of a single witness is sufficient to support a conviction even if the testimony of the witness is inconsistent." **State v. Dodd**, 637 S.W.3d 659, 668 (Mo.App. 2021) (quoting **State v. Bell**, 936 S.W.2d 204, 207 (Mo.App. 1996)). In this case, the testimony of the victim, even if inconsistent, was not the only testimony regarding Studdard's inappropriate acts toward the victim. Four siblings of the victim testified they saw Studdard inappropriately

4

touching her. The evidence adduced at trial was sufficient to support the guilty verdicts. Points I and II are denied.

## Trial Court's Exclusion of Evidence (Points III, IV, and V)

Studdard challenges the trial court's exclusion of testimony of the family's pastor, the pastor's wife, and the victim's mother as to certain statements made by the victim in a family counseling session in which the victim and these three people were participants. The court excluded the testimony at issue, finding it was privileged. Studdard contends the Missouri statute preventing a pastor from testifying about communications made to him in his capacity as a spiritual advisor does not exclude the pastor's testimony here. Studdard further contends the presence of third parties (the pastor's wife and the victim's mother) negated any privilege adhering to the victim's statements, therefore the trial court erred in excluding those statements from evidence. We disagree.

The trial court sustained the State's motion *in limine* to exclude statements the victim made in the family counseling session asserting that Studdard gave her an "inappropriate" skin-to-skin back rub that made her uncomfortable, but she denied the touching was sexual. After Studdard's offer of proof regarding the victim's statements in the family counseling session, the trial court determined the testimony of both the pastor and his wife was privileged. There was no offer of proof regarding the victim's mother's testimony. Studdard called the victim's mother as a defense witness. Defense counsel asked the victim's mother about the meeting. The State objected. The trial court sustained the objection.

### Standard of Review

"Trial courts are 'vested with broad discretion to admit or exclude evidence.'" *State v. Pierce*, 678 S.W.3d 115, 121 (Mo.App. 2023) (quoting *State v. Tisius*, 362

5

S.W.3d 398, 405 (Mo. banc 2012)). "On appeal, we review those decisions for abuse of discretion and will reverse only when the error was so prejudicial as to deprive the defendant of a fair trial." **Pierce**, 678 S.W.3d at 121. "A trial court abuses its discretion in the admission of evidence when its ruling is clearly against the logic of the circumstances then before the trial court and the ruling is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." **State v. Robinson**, 535 S.W.3d 761, 766 (Mo.App. 2017). "An error is prejudicial only if a reasonable probability exists that the trial court's error affected the outcome of the trial." **Id.** In other words, the admission or exclusion of the challenged evidence must have been outcome determinative. **State v. Mays**, 501 S.W.3d 484, 489 (Mo.App. 2016), *as modified* (Aug. 30, 2016).

Clergy-Communicant Privilege

Privileges based on professional relationships grow out of the public policy encouraging confidentiality in certain relationships "without which these relationships cannot be effective." Robert P. Mosteller, et al., *McCormick on Evidence* § 72, at 547 (8th ed. 2020). Most privileges are not based in common law, but were created legislatively to balance competing social values. **Id.** at § 75, at 566. Here, the competing public policies or social values are confidentiality in specified relationships versus the general rule that courts of justice are entitled to receive the full testimony of all facts known by every witness. Edward J. Imwinkelried, *The New Wigmore: Evidentiary Privileges* § 3.2.3 (2d ed. 2009). As stated by the Supreme Court of the United States:

> Testimonial exclusionary rules and privileges contravene the fundamental principle that the public has a right to every [person's] evidence. As such, they must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a

6

> public good transcending the normally predominant principle of utilizing
> all rational means for ascertaining the truth.

*Trammel v. U.S.*, 445 U.S. 40, 49 (1980) (internal citations and punctuation omitted). *See also* *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996) ("When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule.").

"The priest-penitent privilege recognizes the human need to disclose to a spiritual counselor, in total and absolute confidence, what are believed to be flawed acts or thoughts and to receive priestly consolation and guidance in return." *Trammel*, 445 U.S. at 51. All 50 states have created some form of statutory clergy-communicant privilege. Imwinkelried, § 6.2.3, at 525.

Missouri has recognized the evidentiary privilege protecting communications between clergy and communicant since at least 1835. RSMo, Witnesses § 16 (1835) ("No minister of the gospel, or priest of any denomination, shall be required or allowed to disclose any confessions made to him in his professional character, in the course of discipline enjoined by the rules or practice of such denomination."). *See also* *State v. Morgan*, 95 S.W. 402 (Mo. 1906) (holding that witness, minister *not* acting in his "professional character," was competent to testify in criminal trial).

Under the current version of the statute, § 491.060(4), "Any person practicing as a minister of the gospel, priest, rabbi or other person serving in a similar capacity for any organized religion, concerning a communication made to him or her in his or her professional capacity as a spiritual advisor, confessor, counselor, or comforter" shall be

7

incompetent to testify in Missouri courts.[3]   The statutory privilege adheres to a communication when a person from whom testimony is sought is a minister and the communication made to that minister fell within the context of professional duties as "a spiritual advisor, confessor, counsel, or comforter."[4] ***State v. Gerhart***, 129 S.W.3d 893, 898 (Mo.App. 2004).

The Pastor

Based upon the language of the statute and the subsequent cases interpreting it,[5] we discern no abuse of discretion in the trial court's determination that the pastor could not testify as to the victim's statements in the family counseling session.  The pastor holds a license from the Church of the Nazarene.  He testified that his job as pastor is "[t]o preach, to counsel, to listen, and comfort, to lead people in their walk with Christ, to teach from the Bible."  The Studdards sought family counseling after the victim told her mother that Studdard had touched her in a way that made her feel uncomfortable.  The victim's statements certainly fell within the context of the pastor's professional duties as a counselor.  The pastor was acting as a spiritual advisor in the counseling session.  Thus, under the statute, the statements of the victim to the pastor are privileged.  Studdard

---

[3] Unless otherwise designated, all statutory citations are to RSMo (2016).

[4] The statute has been amended multiple times.  During one such amendment process, a 1977 House Committee Summary stated:  "This bill provides that information obtained by a minister, priest or rabbi on communication in his professional capacity as spiritual advisor, counselor or consultant will be exempt from any court testimony."  The summary also commented on the proponents, "[s]upporters say the bill is needed to allow for more freedom on communication between persons and their religious counselors. Testifying for the bill was the Missouri Association of Baptist Ministers."  *Testimony of Religious Leaders: Hearing on H.B. 175 Before the Comm. on Civ. & Crim. Just*. 79th Gen. Assemb. 1st Reg. Sess. (Mo. 1977), https://www.senate.mo.gov/legislativeLibrary/history/1977%2079th%20General%20Assembly%201st%2 0Regular%20Session/1977%20House%20Committee%20Summaries.pdf   (1977   House   Committee Summaries.pdf at 24).

[5] We acknowledge the uncomfortable conflict between the statutory language rendering witnesses described in the statute (i.e., attorney, pastor, physician, et al.) incompetent to testify.  Yet, the caselaw construing the statute consistently employs the language of privilege, not incompetency.  *See, e.g.*, ***Mays***, 501 S.W.3d at 488 (citing statute but addressing matter regarding statement to minister as one of "privilege").  The Court of Appeals is bound by both statutory language and judicial precedent.

8

argues the privilege was waived because the victim made her statements in the presence of third parties.  As discussed below, we disagree.  We find no abuse of discretion in the trial court's exclusion of the pastor's testimony.

<u>Presence of Third Parties</u>

Studdard contends that the trial court erred in excluding the testimony of the pastor, his wife, and the victim's mother.  Studdard claims that, as third parties to the communication between the pastor and the victim, their presence precludes the clergy-communicant privilege adhering to the victim's statements.

No Missouri caselaw directly addresses whether a third party's presence negates the privilege adhering to an otherwise privileged communication to clergy.  For guidance, we look to Missouri cases addressing the effect of a third party's presence on communications protected by other testimonial privileges.  The general rule in Missouri is that "[a] party cannot claim attorney-client privilege for communications conducted when an *unnecessary* third party is included in the communications."[6]  ***State ex rel.*** ***Garrabrant v. Holden***, 633 S.W.3d 356, 360 (Mo. banc 2021) (emphasis ours).  *See also* ***State v. Longo***, 789 S.W.2d 812, 815 (Mo.App. 1990) ("The presence of a third party, *not essential to the transmission of information or whose presence is not reasonably necessary for the protection of the client's interest*, belies the necessary element of confidentiality and vitiates the attorney-client privilege.") (emphasis ours); ***State v. Shire***, 850 S.W.2d 923, 931 (Mo.App. 1993) ("The presence of a third person, however, such as a relative or friend of the client, who is not essential to the transmission

---

[6] Attorneys are incompetent to testify as to "any communication made to the attorney by such attorney's client in that relation, or such attorney's advice thereon, without the consent of such client."  RSMo §491.060(3).

9

of information or whose presence is not reasonably necessary for the protection of the client's interest, will vitiate the privilege."). The destruction of the privilege by the presence of a third party is based "on the ground that the communication was never intended to be confidential." ***McCaffrey v. Brennan's Est.***, 533 S.W.2d 264, 267 (Mo.App. 1976). The attorney-client privilege is *not* nullified, however, "by reason of the presence of a third person if the circumstances surrounding or necessitating the presence may be such that the communication still retains its confidential character and the attending privilege." ***State v. Fingers***, 564 S.W.2d 579, 582 (Mo.App. 1978).

Regarding doctor-patient privilege, Missouri courts hold the privilege is waived when a patient discloses "facts freely and publicly in the presence of third persons whose presence is not necessary to the patient's treatment."[7] ***State v. Lewis***, 735 S.W.2d 183, 187 (Mo.App. 1987) (citing ***State v. Scott***, 491 S.W.2d 514, 519 (Mo. banc 1973)).

These Missouri cases addressing other privileges created within the same statute as the clergy-communicant privilege consistently hold that the presence of third parties precludes the privilege when their presence is not necessary and the communication was made without the communicator's expectation of privacy or confidentiality.

We also look to the law of other states to further our analysis. ***State v. Ingram***, 662 S.W.3d 212, 223 (Mo.App. 2023) (on issues of first impression, appellate courts "look to relevant case law from other jurisdictions which [is] instructive on [the] issue."). As with other privileges secured by Missouri statutes, courts in other states hold that whether a third-party's presence vitiates the privilege frequently depends on whether the speaker

---

[7] A physician, chiropractor, psychologist, or dentist is incompetent to testify "concerning any information which he or she may have acquired from any patient while attending the patient in a professional character, and which information was necessary to enable him or her to prescribe and provide treatment for such patient as a physician, chiropractor, psychologist or dentist." RSMo § 491.060(5).

expected the communication to be confidential. "Confidentiality is a necessary factor in establishing a testimonial privilege." *State v. Martin*, 975 P.2d 1020, 1027 (Wash. 1999). In Connecticut, "a communication is confidential if, at the time of the communication, the communicator could have had a reasonable expectation of confidentiality." *State v. Mark R.*, 17 A.3d 1, 8 (Conn. 2011) (quoting *State v. Christian*, 841 A.2d 1158, 1178 (Conn. 2004)). In New York, the test is described as "whether in the light of all the surrounding circumstances, and particularly the occasion for the presence of the third person, the communication was intended to be confidential and complied with the other provisions of the statute." *People v. Decina*, 138 N.E.2d 799, 807 (N.Y. 1956). The Supreme Court of Georgia holds that public policy supports maintaining the privilege between psychiatrist and patient "where a third party is present as a necessary or customary participant in the consultation and treatment." *Sims v. State*, 311 S.E.2d 161, 165 (Ga. 1984).

Among these cases, *Sims* is most instructive. In *Sims*, a defendant attempted to proffer testimony of a psychiatrist who had jointly treated defendant and her husband in marital counseling. The trial court disallowed the testimony on the basis of the Georgia statute regarding communications between a psychiatrist and patient and between husband and wife. On appeal, the Supreme Court of Georgia stated:

> While it is true, as defendant suggests, that the presence of a third party will sometimes destroy the privileged nature of communications, we join the weight of authority from other jurisdictions in holding that there is a strong public policy in favor of preserving the confidentiality of psychiatric-patient confidences where a third party is present as a necessary or customary participant in the consultation and treatment.

*Id.* (footnotes and internal citations omitted). The Supreme Court of Georgia went on to find that because the evidence adduced at trial indicated that the couple was jointly

11

seeking marriage counseling, the victim was a "necessary participant" in the counseling sessions. *Id.* The victim's statements were thus "entitled to protection." *Id.* The presence of the victim's spouse, who was also a necessary party, did not vitiate the privilege. *Id.* at 166.

<u>The Pastor's Wife</u>

We now apply these principles to the situation before us. The pastor testified that the Studdards "expressed that they had confidence in [my wife] and I as a pastor, that we could discuss it and hopefully through some process of family counseling, you know, get things worked out." The pastor's wife testified that it is standard for her to be present for the pastor's spiritual counseling when a woman is present. She stated, "He does some counseling man-to-man, but if there's a woman present, then I'm there." She testified that she is present when a woman is present because both she and the pastor believe it to be appropriate.

She also testified that in sensitive situations like sexual abuse, she would keep discussion of those matters confidential. Regarding confidentiality, on cross-examination the State asked,

| | |
|---|---|
| [State:] | And the counseling sessions that you attend with your husband, they are, in fact, confidential, aren't they? |
| [Pastor's Wife:] | I suppose it would just depend. |
| [State:] | Ma'am, if somebody came in for counseling, and you were present, and there were things of a sensitive nature in the family like sexual abuse, that's not something that you would spread out to anybody else – |
| [Pastor's Wife:] | Right. Yes. |
| [State:] | -- would it? |

| | |
|---|---|
| [Pastor's Wife:] | Correct. We would not discuss it. |
| [State:] | That would be absolutely confidential, wouldn't it? |
| [Pastor's Wife:] | Yes. |
| [State:] | And that would be something that anybody would expect if they were in that? |
| [Pastor's Wife:] | Right. But I don't know, you know, confidential outside of the family, but it doesn't mean to me – I don't know where you're going with that, I guess. |
| [State:] | Well, confidential is confidential. It's not something you would talk to somebody else about? |
| [Pastor's Wife:] | Correct. |

Based on her testimony, the pastor's wife is commonly involved in spiritual counseling to women or when women are present. The pastor's wife was a necessary and customary participant in the spiritual counseling facilitated by the pastor. This determination is supported by the pastor's wife's testimony that in situations such as this, the matter would remain confidential. Due to her customary participation in the pastor's counseling of women and her maintenance of privacy and confidentiality as to the content of counseling sessions, it is reasonable to conclude that the pastor's wife's presence did not vitiate the privilege as to the statements the victim made during the family counseling session. Accordingly, we find no abuse of discretion in the trial court's exclusion of the pastor's wife's testimony about those statements.

The Victim's Mother

There is nothing in the record to demonstrate how the victim's mother would have testified regarding the victim's statements in the family counseling session. Defense counsel asked victim's mother whether the victim showed the extent of the alleged inappropriate touching to the pastor during the meeting. The State objected:

| | |
|---|---|
| [Defense:] | Did you attend a meeting? |
| [Victim's mother:] | Yes. |
| [Defense:] | And was [victim] present at one of those meetings? |
| [Victim's mother:] | At one of them, yes, or more, but not at the first one. |
| [Defense:] | At some point during that meeting, did she show you where the inappropriate touch had taken place? |
| [Victim's mother:] | She was showing [Pastor], but – |
| [State:] | Objection, Your Honor.  This goes to the State's Second Motion in Limine, which we discussed before, the conversation in the scope of the spiritual counseling with the members of the church. |
| The Court: | Okay.  Sustained. |

Defense counsel ceased questioning victim's mother about what victim said or did at the meeting.

To preserve for appeal a claim that evidence was improperly excluded, "the proponent of the evidence must attempt to present the evidence at trial, and if an objection is sustained, the proponent must then make an offer of proof." *State v. Jones*, 299 S.W.3d 324, 327 (Mo.App. 2009) (quoting *State v. Speaks*, 298 S.W.3d 70, 85 (Mo.App. 2009)).  The offer of proof serves a dual purpose:

> (1) it preserve[s] the record for appeal so the appellate court understands the scope and effect of the questions and proposed answers in considering whether the trial judge's ruling was proper, and (2) it allows the trial judge to further consider the claim of admissibility after having ruled the evidence inadmissible in pretrial hearings.

*State v. Woods*, 357 S.W.3d 249, 253 (Mo.App. 2012) (internal punctuation and citations omitted) (alteration in original).  To achieve these goals, an offer of proof must place in the record:  "(1) what the proffered evidence would be; (2) its object and purpose; and (3) all the facts necessary to establish its relevance and admissibility." *Menschik v.*

14

*Heartland Reg'l Med. Ctr.*, 531 S.W.3d 551, 562 (Mo.App. 2017) (quoting ***Key v. Diamond Int'l Trucks***, 453 S.W.3d 352, 362 (Mo.App. 2015)). "Should the party seeking to introduce the evidence fail to make the offer of proof, then nothing is preserved for review and the claim of error must be dismissed." ***Menschik***, 531 S.W.3d at 562 (citing ***Reed v. Kansas City Missouri Sch. Dist.***, 504 S.W.3d 235, 243 (Mo.App. 2016)).

Because appellant made no offer of proof demonstrating what the testimony of victim's mother might include, we cannot determine whether the trial court abused its discretion in excluding her testimony. We are not permitted to speculate as to how the victim's mother would have testified, nor are we permitted to assume that the mother's testimony would have been consistent with the testimony of the pastor and the pastor's wife. As to the excluded testimony of the victim's mother, there is nothing in the record on appeal to review on this point. Since we do not know what the testimony of the victim's mother would have been, we cannot determine that the trial court abused its discretion in excluding the evidence.

As to the impact of the victim's mother's presence on the clergy-communicant privilege, the victim's mother was a necessary participant in the family counseling session where, as discussed above, there was an expectation of confidentiality. Her presence did not vitiate the privilege in regard to the testimony of the pastor or his wife.

The trial court did not abuse its discretion in excluding the testimony at issue. As there was no error, we need not discuss prejudice to Studdard as a result of the exclusion of the testimony of the pastor, the pastor's wife, and the victim's mother. Points III, IV, and V are denied.

## Georgia Statement of Victim's Sister (Point VI)

In his sixth point, Studdard argues that the trial court erred in allowing the State to use the victim's sister's out-of-court statement to law enforcement officials in Georgia that Studdard had abused the victim and had attempted to abuse the victim's sister (the "Georgia statement"). Studdard contends that the Georgia statement was improper hearsay and, therefore, inadmissible.

Hearsay is "any out-of-court statement that is used to prove the truth of the matter asserted and that depends upon the veracity of the statement for its value." *State v. Winfrey*, 337 S.W.3d 1, 6 (Mo. banc 2011) (quoting *State v. Sutherland*, 939 S.W.2nd 373, 376 (Mo. banc 1997)). As a general rule, hearsay statements are inadmissible "unless they fall within a recognized exception to the hearsay rule." *Winfrey*, 337 S.W.3d at 6. But, not all out-of-court statements are hearsay; only those offered to prove "the truth of the matter asserted." *Id.* Statements offered to impeach the credibility of a witness are not hearsay. *State v. Simmons*, 515 S.W.3d 769, 775 (Mo.App. 2017).

The Georgia statement was not hearsay because it was not offered to prove the truth of the matter asserted. The State introduced the Georgia statement to cast doubt on the credibility of the victim's mother. In the State's case in chief, four of the victim's siblings testified that they had told the victim's mother they witnessed Studdard inappropriately touching the victim. On direct examination, the victim's mother testified that none of her children, including the victim, told her they witnessed Studdard inappropriately touching the victim. Thus, on cross examination and over Studdard's objections, the State presented the Georgia statement to the victim's mother and asked whether she had seen the statement before. The victim's mother testified that she had seen it, but continued to claim that she knew nothing about allegations that Studdard had

inappropriately touched the victim. The State then had the victim's mother read aloud the portion of the statement that accused Studdard of inappropriately touching the victim and her sister, thereby contradicting the mother's earlier testimony that she was unaware of the allegations. The victim's mother's awareness of the Georgia statement was offered to show that she was aware of the allegations it contained, not to show that the allegations contained in the statement were true. Because in this context the Georgia statement was not hearsay, Studdard's point fails. Point VI is denied.

## Propensity Evidence (Points VII and VIII)

In his last two points, Studdard argues that the trial court erred in allowing the State to introduce evidence of other similar but uncharged acts against the victim (Point VII) and her sisters (Point VIII). Regarding both points, Studdard contends that the evidence was more prejudicial than probative, thus inadmissible.

In propensity evidence cases we review for abuse of discretion as described above. *Pierce*, 678 S.W.3d at 121. Relevant to our inquiry is article 1, § 18(c) of the Missouri Constitution as amended by the Missouri electorate in 2014, which provides:

> [I]n prosecutions for crimes of a sexual nature involving a victim under eighteen years of age, relevant evidence of prior criminal acts, whether charged or uncharged, is admissible for the purpose of corroborating the victim's testimony or demonstrating the defendant's propensity to commit the crime with which he or she is presently charged. The court may exclude relevant evidence of prior criminal acts if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

"Propensity evidence is evidence of uncharged crimes, wrongs, or acts used to establish that defendant has a natural tendency to commit the crime charged." *Pierce*, 678 S.W.3d at 121 (quoting *State v. Shockley*, 410 S.W.3d 179, 193 (Mo. banc 2013)). Under § 18(c), "relevant evidence may be excluded when the risk of unfair prejudice substantially outweighs its probative value." *Pierce*, 678 S.W.3d at 121. In assessing probative value,

a court "consider[s] whether the evidence is 'sufficient for the jury to conclude the defendant actually committed the prior criminal act'" and whether the evidence tends to show that "the defendant had a propensity to commit the crimes charged at the time they were allegedly committed." *Id.* at 122 (alteration in original). A court should consider the similarity between the prior acts and the acts charged as well as the length of time between the crimes charged and the prior acts. *State v. Williams*, 548 S.W.3d 275, 289 (Mo. banc 2018). Also relevant is the State's need for the propensity evidence to make its case. *Id.*

> Because of the secretive nature of the crime in most cases involving sexual abuse or molestation of a child by an adult, the only eyewitnesses to the crime are the defendant and the victim. The trial often becomes a credibility contest between the defendant and the victim. Evidence of prior crimes in such situations, is, therefore, probative.

*State v. Bernard*, 849 S.W.2d 10, 17 (Mo. banc 1993) (citations omitted).

The probative value of the evidence is weighed against the danger of unfair prejudice to the defendant. *Pierce*, 678 S.W.3d at 122. "If [a] jury is allowed to infer (or, worse, speculate) the defendant escaped punishment in the past, it may be inclined to convict merely to punish the defendant for past criminal acts rather than for the crime charged." *Williams*, 548 S.W.3d at 290. Also relevant are the manner in which the State uses the propensity evidence, and whether the evidence of the prior acts overshadows the evidence of the charged crime. *Id.* at 290-91.

The alleged prior acts involved female step-children of the defendant that lived in the same home. The acts described were similar in time, place, and manner to those charged in this case, and the propensity victims and the victim in this case were approximately the same age at the onset of abuse. Finally, because of the lack of any

18

physical evidence to support the charges involving the victim, the State's need for the corroborating testimony of the victim's siblings was high.

Although no evidence was introduced to indicate that Studdard was punished for the other acts against the victim and her sisters, the risk that the jury would improperly punish Studdard for those acts and not the specific acts charged was minimized by a jury instruction, given in writing and read aloud by the judge, that the jury may not convict Studdard on the basis of prior conduct, but only upon the crimes charged. *State v. McFadden*, 391 S.W.3d 408, 424 (Mo. banc 2013) ("The jury is presumed to follow the trial court's instructions."). In closing arguments, both the State and defense counsel discussed the importance that the jury follow the jury instruction regarding the acts charged. Thus, any risk that the jury would punish Studdard for past acts was mitigated by the actions of the trial court, prosecution, and defense counsel. The probative value of the propensity evidence was high, while the risk of prejudice to Studdard was low. Accordingly, Points VII and VIII are denied. The judgment and convictions are affirmed.

JACK A. L. GOODMAN, J. – OPINION AUTHOR

JENNIFER R. GROWCOCK, J. – CONCURS

BECKY J.W. BORTHWICK, J. – CONCURS